Parker H. WORD, M. D. and Reproductive Health Services, Inc., Plaintiffs-Appellants,

v.

John H. POELKER, Mayor of the City of St. Louis, Missouri, and Colonel Eugene J. Camp, Chief of Police, City of St. Louis, Missouri, Defendants-Appellees.

No. 73–1739.

United States Court of Appeals, Eighth Circuit.

Submitted Dec 12, 1973.

Decided Feb. 20, 1974.

Rehearing and Rehearing En Banc Denied March 21, 1974.

Frank Susman, Susman, Willer & Rimmel, St. Louis, Mo., for plaintiffs-appellants.

Eugene P. Freeman, Deputy City Counselor, St. Louis, Mo., for defendants-appellees.

Before BRIGHT and STEPHENSON, Circuit Judges, and STUART, District Judge.*

STEPHENSON, Circuit Judge.

This appeal concerns a constitutional attack on St. Louis City Ordinance No. 56579. The ordinance defines, requires a city permit for, regulates, and restricts abortion clinics. The district court abstained. We reach the merits

* W. C. Stuart, District Judge, Southern District of Iowa sitting by designation.

and hold the ordinance to be unconstitutional.

The ordinance in question which is set out in full as Appendix A of this opinion, attempts to regulate any public place wherein abortions are performed with the exception of public hospitals. Abortions as defined by the ordinance include "the termination of human pregnancy * * * except those found on advice of a licensed physician to be necessary to preserve the life of the mother." The penalty for noncompliance constitutes a misdemeanor carrying a fine of from $250 to $500 or 90 days imprisonment or both. See Appendix A.

The plaintiff-appellants are Dr. Parker H. Word, M. D., a practicing St. Louis, Missouri physician and Reproductive Health Services, Incorporated, a non-profit medical service corporation existing under the laws of Missouri.

United States District Judge Regan invoked the doctrine of abstention and dismissed the case without prejudice urging that "plaintiffs should institute and prosecute in the state courts an appropriate proceeding respecting the validity of the ordinance on state as well as federal grounds." Plaintiffs appeal.

On October 17, 1973 this court granted appellants' motion for injunction pending appeal and expedited the appeal.

*Abstention*

■ It is now clear from the decisions in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) that a sweeping regulation of the abortion decision and its implementation raises clear questions of constitutional dimension regarding a medical doctor's right to practice. Doe v. Bolton, *supra* at 188, 93 S.Ct. 739; Roe v. Wade, *supra* at 165 of 410 U.S., 93 S.Ct. 705. *See also* Nyberg v. City of Virginia, 495 F.2d 1342 (CA8 1974) also decided today. Abstention would serve no valid purpose.

This is not one of those "special circumstances" where the federal courts need refrain from ruling on federal constitutional claims. Wisconsin v. Constantineau, 400 U.S. 433, 437–439, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L. Ed.2d 444 (1967); Hathaway v. Worcester City Hospital, 475 F.2d 701, 705 (CA1 1973). The issue in this case relates to the facial constitutionality of the St. Louis city ordinance when viewed against the backdrop now available in the *Roe* and *Doe* decisions. That determination can be made on the record before us. We choose to make that determination. *See,* Wisconsin v. Constantineau, *supra* at 439 of 400 U.S., 91 S. Ct. 507; Baggett v. Bullitt, 377 U.S. 360, 375–379, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

*The Merits*

[2, 3] A careful reading of the United States Supreme Court decisions in Roe v. Wade and Doe v. Bolton [1] establishes the following broad bases for our decision in this case (and in Nyberg v. City of Virginia, 495 F.2d 1342, also decided today):

(1) The "fundamental" right of privacy includes the abortion decision. Roe v. Wade, *supra* 153–156 [of 410 U.S.], 93 S.Ct. 705.

(2) Even so, no woman has a right to an abortion "at whatever time, in whatever way, and for whatever reason she alone chooses;" there is no right to abortion on demand. Roe v. Wade, *supra* at 153, 93 S.Ct. at 727; Doe v. Bolton, *supra* at 189 of 410 U. S., 93 S.Ct. 739.

(3) The state interest in protecting the health of the pregnant woman and the separate interest of protecting potential human life become compelling at certain points in the pregnancy term (at the end of the first and second trimesters respectively) then and there affording the state the opportu-

---

1. The court instructs that the two opinions should be read together. Roe v. Wade, *supra* at 165 of 410 U.S., 93 S.Ct. 705.

nity to reasonably regulate the abortion procedure. Roe v. Wade, *supra* 162–164 of 410 U.S., 93 S.Ct. 705; Doe v. Bolton, *supra* 194–195 of 410 U.S., 93 S.Ct. 739.

(4) The state regulation must be reasonably and legitimately related to the recognized state interests set out above. Roe v. Wade, *supra* 162–166 of 410 U.S., 93 S.Ct. 705; Doe v. Bolton, *supra* 194–195 of 410 U.S., 93 S.Ct. 739.

(5) Prior to the compelling points (during the first trimester of the pregnancy term) the abortion decision and its effectuation is "inherently, and primarily a medical decision, and basic responsibility for it must rest with the physician." Roe v. Wade, *supra* at 166 of 410 U.S., 93 S.Ct. at 733. *See also* Doe v. Bolton, *supra* 192–200 of 410 U.S., 93 S.Ct. 739.

The city ordinance in question here reflects no recognition of the fundamental rights involved and the commensurate restrictions on state action. Neither are we cited to any persuasive data convincing us that the stringent regulatory measures in the act are necessary to protect either the state's interest in maternal health or future life. No other medical procedures or surgical operations are cited to us where the city or state regulates at the peril of criminal sanctions.

■ We hold that St. Louis city ordinance No. 56579 is, by reason of its failure to exclude the first trimester of pregnancy, an invalid and overbroad enactment infringing unreasonably upon fundamental rights. *Doe* and *Roe, both supra*; Nyberg v. City of Virginia, 495 F.2d 1342 (CA8 1974) also decided today. It is additionally invalid because its stringent requirements are not legitimately related to recognized objectives of the state to protect maternal health and potential human life.

Appellee argues that this result is not warranted since the ordinance here does not prohibit abortion but merely regulates the "persons, conditions and procedures under which abortions are to be performed." While we agree with appellee that the ordinance does not proscribe abortions, we do not agree that that fact, of itself, removes the ordinance from the constitutional realm of *Roe* and *Doe*. The *Doe* decision clearly struck down portions of the Georgia statute governing abortion procedures. Doe v. Bolton, *supra* 192–200 of 410 U.S., 93 S.Ct. 739. We learn from *Doe* that sweeping regulation of the abortion procedure without regard for the conflicting interests involved will not withstand constitutional scrutiny. *Accord, Nyberg, supra* and citations (at 1345 of 495 F.2d) also decided today.

Viewed another way, there is reason to strike down this ordinance. The ordinance seeks to protect interests that are already adequately protected by (1) the physician's medical judgment and professional, ethical standards and (2) the city and state health regulations which are in effect and which have application to clinical procedures in general. The extra layer of regulation which this ordinance imposes becomes unreasonably burdensome of the patients' and physicians' rights.

The ordinance requires that any clinic seeking to perform abortions for a reason other than to preserve the mother's life must obtain a permit.[2] To obtain the permit the applicant must disclose, among other things, what he has done for the last five years; the names of all physicians who will use the facilities to perform abortions; names of all nurses; training and past experience of the applicant; description of the facilities; fees to be charged; plat showing dimensions of the premises, and; working agreement with the hospital. We think that this myriad of requirements is un-

**2.** We note that, assuming a physician were to determine that the abortion were necessary to preserve the mother's life, he could apparently perform the operation in his office without the "abortion clinic" permit.

duly restrictive of a physician's right to administer his judgment as to an operation that is now established to be, within the first trimester of pregnancy, safer than childbirth. We are referred to no other single surgical procedure where doctors are required to "prove up" their overall fitness as they are here. As the court states in Doe v. Bolton, *supra* at 199 of 410 U.S., at 751 of 93 S.Ct.: "If a physician is licensed by the State, he is recognized by the State as capable of exercising acceptable clinical judgment." To single out physicians and their patients who seek abortions and subject them to this ordinance's overview substantially limits the physician's right to practice and the patient's right to her doctor's independent judgment. Doe v. Bolton, *supra* at 197, 93 S.Ct. 739.

The abortion clinic permit is subject to restrictions, among others, that the facilities should be kept clean; that the Health Commissioner shall inspect and certify that sanitation standards are up to par with those applicable to clinics in general, and; that the clinic shall comply with all laws and local ordinances relating to health, sanitation and safety. These restrictions accomplish nothing not already accomplished by the health regulations in force and to which the ordinance itself refers.

In short, viewing the ordinance as a whole, its requirements are not based upon differences that are reasonably related to the purposes of the act in which they are found. Morey v. Doud, 354 U.S. 457, 465, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); Doe v. Bolton, *supra* at 194 of 410 U.S., 93 S.Ct. 739. The restrictions of the instant regulation do not stand up as legitimate and reasonable for the protection of recognized state interests in maternal health and potential human life. The Supreme Court stated in Roe v. Wade: "The State has a legitimate interest in seeing to it that abortion, *like any other medical procedure,* is performed under circumstances that insure maximum safety for the patient." 410 U.S. 113, 149–150, 93 S.Ct. 705, 725 (emphasis supplied).

The ordinance at issue here tenders a cumbersome procedural overview on abortion only. State interests are not served and private rights are usurped. *Compare* Cleveland Bd. of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).

Just as the procedural requirements of the Georgia statute in Doe v. Bolton the overview imposed by this ordinance cannot withstand constitutional examination. Because we cannot say that this extra layer of restriction placed upon abortion is legitimately related to the recognized objectives of state regulation and further, because the ordinance employs limitations that unduly penalize those patients who seek and those doctors who choose to perform abortions, we find it necessary to strike down ordinance No. 56579 in its entirety.

We find it unnecessary to grant injunctive relief, for we assume city officials will give full credence to this decision that the ordinance in question is invalid.

Accordingly, we reverse and remand for entry of an order declaring the city ordinance unconstitutional.

Reversed and remanded.

## APPENDIX A

### Ordinance 56579

#### (Sub. B.B. No. 58 As Amended)

An ordinance requiring that all abortion clinics, as defined therein, obtain a permit from the Board of Public Service and providing that the applicant for such a permit must submit various information to the Board of Public Service and imposing on all permitted abortion clinics various restrictions, regulations and requirements as a condition of the permit and further providing for a procedure for revocation of permit and the renewal thereof, containing a severability clause and an emergency clause.

Be it ordained by the City of St. Louis, as follows:

Section One. Definition—As used in this Ordinance the term "abortion clin-

ic" is hereby defined to mean any place open to members of the public where abortions are performed, regardless of whether abortions are performed for profit or not, but excepting duly licensed general hospitals.

As used in this Ordinance the term "abortion" shall mean the termination of human pregnancy with an intention other than to produce a live birth or to remove a dead fetus, except those found on advice of a licensed physician to be necessary to preserve the life of the mother.

Section Two. Permit Required—No person, either as owner, agent or manager shall operate, conduct, or maintain an abortion clinic without having first obtained a permit therefor from the Board of Public Service.

Section Three. Application Requirements—The application for said permit, which shall be filed with the Board of Public Service shall contain the following:

A. The full and correct name of the applicant, his business address, his current residence, and past residences for a period of five years and the length of time the applicant has been a resident of the State of Missouri. If the applicant is a firm, partnership or association, the full business address of such organization shall be given. If the applicant is a corporation, the full and correct name of such corporation and the name of the state under the laws of which it is incorporated shall be stated in the application. If the applicant is a corporation, the names and address of the current board of directors and the names and resident addresses of all current officers.

B. The names and business and residence addresses of any physician who shall render medical service or treatment at the premises of the applicant along with a written statement from each member of the medical staff, the resident physician or surgeon, superintendent, and matron, certifying that he or she will serve on the staff of the said

institution as stated by the applicant for such permit. If during the permit period any other physicians shall desire to render medical services at the premises of the applicant, the information required in the original application shall be properly submitted to the Director of Health and Hospitals in the form of an addendum to the application and shall be submitted prior to any medical services being rendered by said physician.

C. The names of all nurses or other personnel, employed by the applicant, who shall be providing direct medical care, immediately prior, during or after, to persons upon whom an abortion has been performed. The applicant shall during the permit period submit similar information regarding any such new employees, prior to their employment.

D. The application shall state the training and past experience of the applicant, pertinent to the application. If the applicant is a corporation, a like description of the training and past experience of its officers shall be stated. Also, the same information should be supplied regarding those physicians who will be performing abortions in the clinic in respect to their training and relevant past experience.

E. The applicant, if an individual, or if a corporation, then its officers shall state their previous occupations or employment for a period of five years prior to making the application.

F. A description of medical facilities and major equipment which shall be available and used at the premises of the clinic.

G. The applicant shall submit a schedule of all fees to be charged for all services which are rendered in respect to performing an abortion and shall post, upon receiving a permit, a copy of such fee schedule on the premises.

H. The applicant shall provide a sketch, plat or drawing of the premises showing the dimensions thereon with rooms and areas appropriately labeled.

I. The applicant shall submit a copy of a working agreement with a duly li-

censed general hospital to provide for transfer of patients for emergency treatment whenever necessary. Plans for the transportation of such patients to such hospital at a travel time of not less than five (5) minutes shall be arranged so that treatment can begin in ten (10) minutes.

J. The applicant shall make an oath before a notary public, affirming the truth of statements made in the application or if the applicant is a corporation, the oath of affirmation shall be made by the president and the secretary of the corporation.

Section Four. As a part of the medical record abortion clinic shall require, before an abortion may be performed, a statement by a licensed physician stating the name, age and address of the person, the dates on which he examined her and his best medical judgment as to the date of conception of the fetus.

Section Five. No abortion clinic shall perform an abortion upon any female person under the age of twenty-one years of age, unless the written consent to said abortion shall be obtained from either the husband, one of the natural parents or legal guardian of said female person.

Section Six. The issuance of the permit to an abortion clinic described herein, and its continuance shall be subject to the following restrictions, conditions and requirements to-wit:

A. No abortion clinic shall be permitted on any parcel of real property which is located in any of the following residential zoning districts to-wit: "A" single family; "B" Two Family; "C" Multiple Family.

B. No abortion clinic shall be granted a permit unless a certificate of occupancy shall first be obtained from the Building Commissioner.

C. Every abortion clinic shall keep records on its premises consisting of all the certifications described in and required by Section Four of this Ordinance. All written consents to abortions described in and required by Section Five of this Ordinance.

D. The Director of Health and Hospitals or his designated representatives shall be allowed by any abortion clinic to enter at reasonable hours to examine any records required to be kept by this Ordinance and for the further purpose of determining whether all of the provisions of this Ordinance are being complied with.

E. No permit shall be issued until and unless the applicant shall first obtain a policy of insurance, from a company authorized to do business in the State of Missouri, which provides insurance coverage against claims against the abortion clinic for bodily injury or wrongful death, with limits of said coverage to be in the amount of $100,000.00 or more. The insurance policy required hereunder shall contain a provision for a continuing liability thereunder to the full amount thereof, notwithstanding any recovery thereon, that the liability of the insurer shall not be affected by the insolvency or the bankruptcy of the insured. Every insurance policy required hereunder shall extend for the period to be covered by the permit applied for and the insurer shall be obliged to give written notice to the Director of Health and Hospitals and to the insured before any cancellation or termination thereof earlier than its expiration date and the cancellation or other termination of any such policy shall automatically revoke and terminate the permit hereunder until another policy of insurance complying with the terms hereof shall have been obtained.

F. The permit issued in accordance with this Ordinance shall be conspicuously displayed in the place of business of the permittee and also a copy of this Ordinance shall be posted conspicuously on the said premises.

G. No abortions may be performed under any permit issued hereunder unless it shall be performed at the permanent address listed on the application. Any additional premises or address at

which abortions are to be performed requires a separate and distinct permit.

H. Prior to the issuance of a permit, the Board of Public Service shall request that the Health Commissioner inspect the facilities of the abortion clinic and submit a report to said board whether such clinic meets the standards of cleanliness and sanitation required of health clinics in the City of St. Louis and those requirements applicable to clinics under Ordinance No.      , and lawful regulations of the director of Health and Hospitals provided in paragraph (L) below.

I. Closing hours.—Hours of operation shall be based upon the working agreement between affiliated licensed hospital and abortion clinic.

J. All abortion clinics shall be kept in a clean, healthful and sanitary condition. Tightly covered metal containers shall be provided in quantities adequate to permit disposal of all waste and litter. All waste organic tissue shall be disposed of by incineration.

K. The clinic shall comply with all laws and local ordinances relating to health, sanitation and safety.

L. The Director of Health and Hospitals is hereby authorized and directed to promulgate rules and regulations, after public notice, governing standards to be complied with by abortion clinics, for the health and safety of the persons upon whom abortions are to be performed. In determining such rules and regulations, the Director shall take into account recommendations which may have been adopted by the American Medical Association or any other recognized Medical Association relating to the operation, facilities and equipment of abortion clinics. Before any permit hereunder, shall be issued the Director of Health and Hospitals shall certify that the applicant has complied with his rules and regulations so promulgated.

M. Abortion clinics shall keep in attendance during all regular business hours a physician licensed to practice medicine and surgery in the State of Missouri and who is actively engaged in the practice of medicine and surgery.

Section Seven. The Board of Public Service within a reasonable time after receipt of an application which complies with the provisions of Section Three of this Ordinance, shall cause such an investigation by the Director of Health and Hospitals or his appointee as is necessary to determine if the conditions and requirements of this Ordinance have been complied with. If the requirements have been complied with, the Board of Public Service shall issue a permit valid for a period of one year from date of issuance.

Section Eight. Renewal—The renewal of any permit hereunder shall require conformance with all of the requirements of this ordinance as upon original application.

Section Nine. Severability Clause—It is hereby declared to be the intention of the Board of Aldermen that the sections, paragraphs, sentences, clauses and phrases of this Ordinance are severable, and if any phrase, clause, sentence, paragraph or section of this Ordinance shall be declared invalid or unconstitutional by the valid judgment or decree of any court of competent jurisdiction, such invalidity or unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of this Ordinance, since the same would have been enacted by the Board of Aldermen without the incorporation in the Ordinance of any such invalid or unconstitutional phrase, clause, sentence, paragraph or section.

Section Ten. Transfer prohibited—No permit granted hereunder shall be transferable.

Section Eleven. False statement prohibited—No person shall make, in respect to any written statement or certification required by this Ordinance, a knowingly false statement.

Section Twelve. No person shall assist in, procure or perform an abortion operation on the premises of an abortion clinic, as defined herein, which is not in possession of a duly issued permit.

Section Thirteen. Any abortion clinic which is in operation at the time this Ordinance becomes effective shall be required to comply with the provisions of this Ordinance no later than sixty (60) days following the effective date thereof.

Section Fourteen. Revocation—The Board of Public Service shall revoke any permit issued under this Ordinance for any willful violation by a permittee of any of the provisions, conditions, restrictions and requirements contained herein, provided such permit shall be revoked only after the permittee shall have been notified in writing at his place of business of the violations complained of and shall be afforded an opportunity to be heard in answer to any alleged violation. The notice shall fix a time and place at which the Board of Public Service shall hear and determine the alleged violations. The service of such notice shall not be less than three days prior to the time fixed therein for a hearing.

Section Fifteen. Penalty—Any person, firm or corporation which shall violate any provisions of this Ordinance shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than Two Hundred and Fifty Dollars ($250.00) nor more than Five Hundred Dollars ($500.00) or by imprisonment for not more than ninety (90) days or by both such fine and imprisonment.

Section Sixteen. Emergency Clause —This Ordinance is hereby declared to be necessary for the immediate preservation of the public peace, health and safety of the citizens of this City and as such is an emergency ordinance which shall take immediate effect upon its approval by the Mayor.

Approved: July 26, 1973.