**MAHONING WOMEN'S CENTER, Plaintiff,**

v.

**Jack C. HUNTER et al., Defendants.**

**No. C 76–203 Y.**

United States District Court, N. D. Ohio, E. D.

May 25, 1977.

Dennis Haines, Youngstown, Ohio, for plaintiff.

Edward C. Czopur, Asst. Law Director, City of Youngstown, Youngstown, Ohio, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LAMBROS, District Judge.

This is an action challenging the constitutionality of Chapter 98.00, "Abortions", of the Revised Code of Ordinances of the City of Youngstown.[1] Plaintiff seeks declaratory, injunctive and monetary relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983. The case has been submitted to the Court for resolution of the constitutional issues[2] upon the pleadings, briefs of counsel, and certain stipulated evidence.[3]

---

1. Chapter 98.00 is reproduced in the Appendix to this opinion.

2. By order of February 15, 1977 the Court severed plaintiff's damage claims for purposes of trial.

3. On December 1, 1976 the Court conducted a hearing on plaintiff's motion for preliminary injunction. By order of January 3, 1977 the Court deferred ruling on such motion, consolidated the motion with trial on the merits, and ordered counsel to brief four additional issues prior to trial. Counsel having submitted their briefs, the Court finds it need not address issues I and IV as the parties are not in dispute as to these matters. The Court resolves issues II and III in favor of defendants and will proceed to the merits of this case.

The gravamen of this case concerns defendants' right to regulate plaintiff's performance of first trimester abortions. This case is not one of first impression, and the Court is mindful of the national controversy which has resulted from the Supreme Court's decision in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). It is a controversy of intense moral and legal convictions which has transcended all segments of our society. However, within the context of this litigation it is neither the function nor the intention of the Court to embroil itself with this controversy or to expound upon these convictions. Rather, the Court must determine upon the evidence presented and the applicable legal precedent whether Chapter 98.00 unconstitutionally abridges plaintiff's right to perform first trimester abortions. In accordance with the findings of fact and conclusions of law set forth below, the Court is compelled to resolve this issue in favor of the plaintiff.

## FINDINGS OF FACT

1. Plaintiff is an Ohio corporation established to provide women with first trimester abortions and counseling services regarding reproductive health care. Defendants are various officials of the City of Youngstown.[4]

2. In early October, 1976, plaintiff rented facilities in Youngstown, Ohio in anticipation of commencing clinical services.

3. On October 27, 1976, subsequent to plaintiff's obtaining facilities, the Youngstown city council enacted Chapter 98.00, "ABORTIONS", of the Revised Code of Ordinances.

4. Chapter 98.00 purports to regulate all abortions not performed in a hospital licensed or regulated by the Department of Health of the State of Ohio. Chapter 98.00 further provides that no person shall operate or maintain an abortion service without a license issued by the Board of Health of the City of Youngstown. Evaluation of the abortion service seeking licensure is made by the Board of Health, with the assistance of a panel of qualified obstetricians or gynecologists appointed by the Board. The Board may revoke such license for failure to comply with Chapter 98.00. Violation of the provisions of Chapter 98.00 is punishable by fine and imprisonment.

5. Pursuant to the applicable provisions of Chapter 98.00 plaintiff applied for and was denied a license for its facilities.

6. The regulations of Chapter 98.00 are plenary and encompass virtually every facet of operation of any facility providing abortion services. The evidence establishes that Chapter 98.00 effectively requires any abortion service to be equipped and staffed in such a fashion as to provide facilities equivalent to those of hospital surgical wards.

7. In order to comply with the requirements of Chapter 98.00, plaintiff must absorb the expense of additional equipment and increased staff salaries. Plaintiff's estimated equipment costs approach $50,000.00.

Plaintiff's present service fee is $175.00. Hospital fees for the same services range between $300.00 to $500.00.

8. Chapter 98.00 exclusively regulates facilities providing abortion services. The provisions of said Chapter are inapplicable to facilities which render medical services other than abortions. Nor does the City of Youngstown have any other ordinance which regulates the equipment or procedures to be used by doctors in performing other surgical operations which are comparable in degree of medical complexity to abortion operations.

9. There are no hospitals within the Youngstown area which perform abortions for other than therapeutic purposes. Prior to the enactment of Chapter 98.00 at least one physician in Youngstown did perform first trimester abortions in his office at the request of his patients.

---

4. Upon due consideration, the Court denies the motion to dismiss of defendants Goldberg, Everett, Harrell, Rinkov and Kester.

10. The expert testimony presented to the Court regarding the nature of the first trimester abortion operation and the potential complications which may result from such surgery is in essence diametrically opposed. Doctors Buckley and Fogarty have testified that abortion procedures constitute major surgery of a unique nature which is susceptible to serious complications. Doctors Kelly and Ellison, however, have testified that abortion procedures constitute minor surgery which is basically uncomplicated and comparable to such other surgery as vasectomy and diagnostic dilatation and curettage. The physicians are in similar disagreement as to the necessity of the requirements imposed by Chapter 98.00 in regard to plaintiff's facilities.[5]

11. The Court has extensively reviewed the evidence in this case and finds that the surgical procedures to be utilized by plaintiff, vacuum aspiration and dilatation and curettage,[6] are of a minor nature, involve a low percentage of complications,[7] and do not require regulation of the sort imposed by Chapter 98.00. The abortion operation, and any subjective factors necessarily considered therewith, are well within the exercise of a qualified physician's medical judgment.

## CONCLUSIONS OF LAW

1. The Court initially finds that plaintiff has standing to bring this action. See eg., *Friendship Medical Cen., Ltd. v. Chicago Bd. of Health,* 505 F.2d 1141 (7th Cir. 1974); *Mobile Women's Med. Clinic v. Bd. of Com'rs,* 426 F.Supp. 331 (S.D.Ala. 1977); *Planned Parenthood Ass'n v. Fitzpatrick,* 401 F.Supp. 554 (E.D.Pa.1975). Further as the plaintiff is directly exposed to criminal prosecution this case presents a justiciable controversy. See *Friendship Medical Cen., Ltd. v. Chicago Bd. of Health, supra;* cf. *Planned Parenthood Ass'n v. Fitzpatrick, supra.*

2. Defendants assert that the Supreme Court in *Roe v. Wade:*

[D]id not consider any evidence, nor did it address itself to the question of whether or not medical complications that do not result in death are yet serious enough and occur frequently enough to warrant state intervention. * * * Indeed, no other reported case appears to struggle with factual questions of how frequently abortion complications occur and how serious a problem they present."[8]

This premise appears to be erroneous as among the factors considered by the Supreme Court in *Roe v. Wade* was the position of the American Public Health Association:

It was said that 'a well-equipped hospital' offers more protection 'to cope with unforseen difficulties than an office or clinic without such resources . . .. The factor of gestational age is of overriding importance.' Thus, it was recommended that abortions in the second trimester and early abortions in the presence of existing medical complications be performed in hospitals as inpatient procedures.

Further, *Roe v. Wade* must be read in conjunction with its companion case of *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973),[9] in which the Supreme Court stated:

This is not to say that Georgia may not or should not, from and after the end of the first trimester, adopt standards for licensing all facilities where abortions may be

---

**5.** The doctors' disagreement in this regard focuses upon the need for equipment to deal with major surgical complications. The doctors are in accord as to certain requirements of Chapter 98.00, such as additional recovery facilities and direct surgical supervision by an obstetrician or gynecologist.

**6.** Vacuum aspiration is by far the most common method of performing first trimester abortions.

**7.** For example, defendants' experts have acknowledged that certain complications testified to, such as cardiac arrest and convulsive reactions to anesthesia, are rare. Defendants' experts further acknowledge that any potential complications could occur in a hospital as well as in a doctor's office or plaintiff's clinic.

**8.** Defendants' final brief at 1, 2.

**9.** *Roe v. Wade, supra* at 165, 93 S.Ct. at 732.

performed so long as those standards are legitimately related to the objective the State seeks to accomplish. The appellants contend that such a relationship would be lacking even in a lesser requirement that an abortion be performed in a licensed hospital, as opposed to a facility, such as a clinic, that may be required by the State to possess all the staffing and services necessary to perform an abortion safely (including those adequate to handle serious complications or other emergency, or arrangements with a nearby hospital to provide such services). Appellants and various amici have presented us with a mass of data purporting to demonstrate that some facilities other than hospitals are entirely adequate to perform abortions if they possess these qualifications. The State, on the other hand, has not presented persuasive data to show that only hospitals meet its acknowledged interest in insuring the quality of the operation and the full protection of the patient. We feel compelled to agree with appellants that the State must show more than it has in order to prove that only the full resources of a licensed hospital, rather than those of some other appropriately licensed institution, satisfy these health interests.

Finally, cases subsequent to *Roe v. Wade* and *Doe v. Bolton* have addressed the question of "how frequently abortion complications occur and how serious a problem they present." Eg. *Mobile Women's Med. Clinic v. Bd. of Com'rs, supra.*

3. Defendants having failed to distinguish *Roe v. Wade* and its progeny, the Court must adjudge the issues in this case in accordance with such precedents.

4. In *Roe v. Wade* the Supreme Court held that the fundamental right of privacy founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action is broad enough to encompass a woman's decision whether or not to terminate her pregnancy.[10] As a fundamental right, regulation of this decision is permissible only if warranted by a compelling state interest.[11]

5. The Supreme Court determined that the State's interest becomes compelling at the end of the first trimester. Prior to this point:[12]

> [T]he attending physician, in consultation with his patient, is free to determine, without regulation by the State, that, in his medical judgment, the patient's pregnancy should be terminated. If that decision is reached, the judgment may be effectuated by an abortion free of interference by the State.

Subsequent to the first trimester, however:[13]

> [A] State may regulate the abortion procedure to the extent that the regulation reasonably relates to the preservation and protection of maternal health. Examples of permissible state regulation in this area are requirements as to the qualifications of the person who is to perform the abortion; as to the licensure of that person; as to the facility in which the procedure is to be performed, that is, whether it must be a hospital or may be a clinic or some other place of less-than-hospital status; as to the licensing of the facility; and the like.

6. In *Sendak v. Arnold,* 429 U.S. 968, 97 S.Ct. 476, 50 L.Ed.2d 579 (1976), the Supreme Court recently reaffirmed its holding in *Roe v. Wade* by summarily affirming a three-judge district court[14] which struck down an Indiana statute providing:

> Abortion shall in all instances be a criminal act except when performed under the following circumstances:

> (a) During the first trimester of pregnancy for reasons based upon the professional, medical judgment of the pregnant woman's physician provided:

---

10. *Roe v. Wade, supra* at 153, 93 S.Ct. 705.

11. Id. at 155, 93 S.Ct. 705.

12. Id. at 163, 93 S.Ct. at 732.

13. Id. at 163, 93 S.Ct. at 732.

14. The district court opinion is reported at 416 F.Supp. 22 (S.D.Indiana 1976).

(1) It is performed by such physician in a hospital or a licensed health facility as defined in IC 1971, 16–10–2 which offers the basic safeguards as provided by a hospital admission, and has immediate hospital backup . . ..

In holding this statute unconstitutional the district court expressly relied on the above quoted portions of *Roe v. Wade.* Although affirmance was by summary order, such affirmance is binding on this Court. Eg. *Sen. Cit. Clubs of Winston-Salem v. Duke Power Co.,* 425 F.Supp. 411 (W.D.N.C. 1976).

7. The mandate of the Supreme Court has been further clarified by such decisions as *Friendship Medical Center Ltd. v. Chicago Board of Health,* 505 F.2d 1141 (7th Cir. 1974), *Word v. Poelker,* 495 F.2d 1349 (8th Cir. 1974), and *Mobile Women's Med. Clinic v. Bd. of Com'rs, supra,* which have held ordinances almost identical to Chapter 98.00 to be unconstitutional.

■ 8. Defendants assert that current cases demonstrate that first trimester abortion requirements may be adopted. To the extent such requirements do not impair the abortion decision and do not treat abortion operations differently from other comparable surgical procedures, the defendants are correct.[15] Eg. *Planned Parenthood of Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788; *Wolfe v. Schroering,* 541 F.2d 523 (6th Cir. 1976); *Abortion Coalition v. Mich. Dept. of Public Health,* 426 F.Supp. 471 (E.D.Mich.1977); *Mobile Women's Med. Clinic v. Bd. of Com'rs, supra.*

However, Chapter 98.00 presents sweeping regulations which disregard the fundamental rights involved and the commensurate restrictions on state action. Such sweeping regulation will not withstand constitutional scrutiny. Eg. *Word v. Poelker, supra.*

■ 9. In view of established precedent, it is clear that Chapter 98.00 attempts to regulate first trimester abortions in a constitutionally impermissible manner. Nor will the Court dissect Chapter 98.00 in order to carve out a constitutionally acceptable ordinance. It is not the Court's function to legislate by judicial decree. The enactment of legislation which complies with the requirements of the Supreme Court is left to the city council of Youngstown.

■ 10. The Court further finds Chapter 98.00 to be unconstitutional in that it denies equal protection of the law to those physicians who would perform abortions. Where fundamental rights are involved, a compelling interest is required in order to differentiate in treatment between two classes which do not differ on grounds related to the purpose of the challenged ordinance. Eg. *Friendship Medical Cen., LTD v. Chicago Bd. of Health, supra; Word v. Poelker, supra.* Although the purpose of Chapter 98.00 is to effectuate "the highest standards of health care," such ordinance regulates only those physicians who would perform abortions while leaving other comparable medical procedures to the discretion of the attending physician. Thus, Chapter 98.00 differentiates between medical procedures which are without distinction as to surgical risk in a fashion which adversely affects the exercise of fundamental rights. Defendants have failed to demonstrate such a compelling interest as to warrant this regulation.

11. The Court having found Chapter 98.-00 to violate the constitutional standards set forth in *Roe v. Wade* and equal protection of the laws, declines to issue the injunctive relief sought by plaintiff. The Court is confident that the defendants will abide by the Court's order and therefore finds injunctive relief to be unnecessary at this time.

IT IS SO ORDERED.

**15.** Defendants have principally relied upon *Hodgson v. Lawson,* 542 F.2d 1350 (8th Cir. 1976), as authority for the imposition of abortion regulations to ensure maximum patient safety. The Court notes, however, that upon remand the district court expressly disagreed with the 8th Circuit position in light of the recent decision in *Arnold v. Sendak, supra.* See *Hodgson v. Lawson,* No. 4–74–155 (D.Minn. March 7, 1977).