**FOX VALLEY REPRODUCTIVE HEALTH CARE CENTER, INC., Plaintiff,**

v.

**John ARFT, Clyde Coenen, John Stevens, Leslie Woldt and Herbert Ziegler, Defendants.**

**No. 78–C–28.**

United States District Court,
E. D. Wisconsin.

March 8, 1978.

Herrling, Swain, Drengler & McCanna by Robert W. Swain, Jr., Appleton, Wis., for plaintiff.

Herrling, Clark, Hartzheim & Siddal by Roger W. Clark, Appleton, Wis., for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The plaintiff has filed a motion for a preliminary injunction. The parties have submitted briefs and affidavits in support of their respective positions. The motion will be granted.

This is an action challenging the health care regulations of the Town of Grand Chute. It is claimed that these regulations are an impermissible restriction on the plaintiff's performance of first trimester abortions. The plaintiff seeks declaratory and injunctive relief and compensatory and punitive damages. Jurisdiction is alleged to exist pursuant to 28 U.S.C. §§ 1343, 2201 and 2202. The defendants' alleged liability is predicated on 42 U.S.C. § 1983.

The plaintiff, Fox Valley Reproductive Health Care Center, Inc., is a private Wisconsin corporation formed to provide first trimester abortions, supportive counseling, and general reproductive health care education. The defendants, all of whom are sued in their individual and official capacities, are members of the Town of Grand Chute's board of health, and also variously serve as town board members, health officer, and town clerk.

The following facts appear to be undisputed. Beginning in early 1977, the officers of the plaintiff corporation investigated the feasibility of opening a reproductive health care clinic at which abortions would be performed for profit. Their research disclosed that annually between 1,700 and

2,300 women from the Fox Valley area traveled to Milwaukee or Madison to obtain abortions. Based on this information, a decision to open a clinic in the Fox Valley area was made.

The plaintiff corporation was formed; a building to house the clinic was leased; the building was remodeled; equipment and supplies were ordered; and arrangements for a medical staff were made. Substantial expenditures were incurred in making the above preparations.

On September 20, 1977, there were newspaper reports that the plaintiff was planning to open a clinic at which abortions would be performed. The next day, the defendant members of the town board visited the clinic. On September 23, 1977, the town's building inspector ordered that remodeling of the building cease, claiming that the work performed on the building exceeded the terms of the building and plumbing permits which had issued.

On October 18, 1977, the town board directed the town's attorney to draft an ordinance regulating abortion facilities. On October 19, 1977, the town's board of health held a public meeting to hear testimony regarding establishment of the clinic. According to the minutes of the meeting, a resolution was adopted opposing "abortion and the establishment of an abortion facility," and a second resolution was adopted authorizing the town's legal counsel to prepare "an ordinance regulating operation of the Abortion Clinic in Grand Chute." A set of regulations, denominated chapter 22 of the ordinances of the Town of Grand Chute, was adopted by the town board on November 1, 1977, and remains in effect.

The regulations apply to any nonhospital facility at which surgical, diagnostic, or therapeutic procedures are performed; however, certain provisions apply specifically to abortion clinics and procedures. In a comprehensive fashion, the 38 lengthy provisions regulate licensing, building plans and specifications, supplies and equipment, medical policies and procedures, record keeping, patient care, and physician and nurse qualifications. Upon a "conviction"

of violating any provision of chapter 22, a "fine" or "forfeiture" of not more than "$500 nor less than $50.00" may be imposed, and for failure to pay such sum, the violator may be imprisoned in the county jail until the sum is paid.

The plaintiff avers that the clinic has been prepared to open and perform first trimester abortions since November 1, 1977, but that the clinic cannot conform to most of the provisions of chapter 22 which relate to the physical facility and to the policies and procedures concerning first trimester abortions. Consequently, the plaintiff's clinic's operations have been limited to counseling.

The plaintiff claims that the town's regulations in chapter 22 are invalid, overbroad, infringe unreasonably upon a woman's right of privacy, and are not related to recognized governmental objectives of protecting maternal health. The plaintiff also asserts that the regulations violate the substantive and procedural due process and equal protection guarantees of the Fourteenth Amendment. It is alleged that the defendants have denied the plaintiff the right to engage in a business protected by the laws and Constitution of the United States.

The guidelines to be followed by a district court on a motion for a preliminary injunction are well established. The plaintiff must demonstrate that:

"(1) the plaintiffs have no adequate remedy at law and will be irreparably harmed if the injunction does not issue; (2) the threatened injury to the plaintiffs outweighs the threatened harm the injunction may inflict on the defendant; (3) the plaintiffs have at least a reasonable likelihood of success on the merits; and (4) the granting of a preliminary injunction will not disserve the public interest." *Fox Valley Harvestore v. A. O. Smith Harvestore Products, Inc.,* 545 F.2d 1096, 1097 (7th Cir. 1976).

The plaintiff argues that irreparable harm will ensue if a preliminary injunction is not granted because the high cost of

bringing the physical facility into compliance with chapter 22 will force the plaintiff to raise the planned fee for performing abortions to an amount which would be beyond the economic means of poor women. The plaintiff's affidavits state that the original planned fee for performing a first trimester abortion was to be $150, but that the fee would have to be increased to an amount between $300 and $500 if the plaintiff were burdened with the costs of compliance. These averments, in conjunction with the solicitude that courts have shown for a woman's right to freedom from interference in deciding whether to seek an abortion, a right which this plaintiff has standing to advance, *Friendship Medical Center, Ltd. v. Chicago Board of Health,* 505 F.2d 1141 (7th Cir. 1974), cert. denied 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975), support a finding that irreparable injury is threatened.

I also believe that the threatened harm to the plaintiff and its prospective clients—the total ban of first trimester abortions in the plaintiff's nonconforming facility—outweighs any harm the injunction may inflict on the defendants.

I also find that the plaintiff has a reasonable likelihood of success on the merits. In *Friendship Medical Center, Ltd.,* supra, the court of appeals for this circuit sustained a challenge to regulations remarkably similar to those in chapter 22. Rejecting arguments akin to those made by the defendants in this case, the court held, at pp. 1151–52:

> "*Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) compel us to conclude that the fundamental right of privacy includes, at least during the first trimester of pregnancy, the right to be free from governmental regulations that have an effect on the abortion decision. One look at the challenged regulations . . . show[s] that they regulate during the first trimester precisely the type of things that the Supreme Court has said cannot be regulated until after that 'compelling point.'"

In *Arnold v. Sendak,* 416 F.Supp. 22 (S.D. Ind.1976), a three-judge court in this circuit followed *Friendship Medical Center, Ltd.* and invalidated an Indiana statute which required that first trimester abortions be performed "in a hospital or a licensed facility . . . which offers the basic safeguards as provided by a hospital admission, and has immediate hospital backup. . ." The court stated:

> "The challenged section of the Indiana abortion statute is clearly unconstitutional. The decisions in *Roe* and *Doe* expressly state that regulation by the State as to the facility in which an abortion is to be performed is the type of regulation which can only occur after the 'compelling point' or end of the first trimester." 416 F.Supp. at 23–24.

The Supreme Court summarily affirmed *Arnold* at 429 U.S. 968, 97 S.Ct. 476, 50 L.Ed.2d 579 (1976). The plaintiff has cited numerous other authorities that are in substantial agreement.

The defendants contend that subsequent Supreme Court cases have undermined *Friendship Medical Center, Ltd.* and *Arnold* and authorize the regulations in chapter 22. Reliance is placed on the following language from *Commonwealth v. Menillo,* 423 U.S. 9, 11, 96 S.Ct. 170, 46 L.Ed.2d 152 (1975):

> "[T]he insufficiency of the State's interest in maternal health is predicated upon the first trimester abortion's being as safe for the woman as normal childbirth at term, and that predicate holds true only if the abortion is performed by medically competent personnel under conditions insuring maximum safety for the woman." 423 U.S. at 11, 96 S.Ct. at 171.

I do not read the Court's per curiam decision as authorizing the pervasive regulatory scheme promulgated by the Town of Grand Chute. The state indeed has an interest in insuring that abortion procedures are as safe as childbirth procedures, and *Menillo* specifically held that the state, in furtherance of that interest, may require that abortions be performed by medically competent personnel. There is no indication that

the existing Wisconsin laws and regulations are not already insuring the safety of maternal health. See *Word v. Poelker*, 495 F.2d 1349, 1351 (8th Cir. 1974). The executive director of the plaintiff corporation states in her affidavit:

"I am fully prepared to conduct the Center operations in strict conformity with all applicable State rules and regulations including those contained in the Rules of the Medical Examining Board and of the Board of Nursing as published in the Wisconsin Administrative Code. The Rules of the Medical Examining Board include rules dealing specifically with abortions . . . and I have been prepared to conform with those rules."

In view of the fundamental interest of a woman in being free from "unduly burdensome interference with her freedom to decide whether to terminate her pregnancy," *Maher v. Roe*, 432 U.S. 464, 474, 97 S.Ct. 2376, 2382, 53 L.Ed.2d 484 (1977), and the cogent authority for holding that comparable regulations are such a burdensome interference, I find that it is reasonably likely that the town's regulations in question are constitutionally infirm.

I find unpersuasive the defendants' arguments that the barrier to the opening of the plaintiff's facility is not the town's regulations, but rather it is the clinic's being housed in a building that did not meet other state, county and municipal regulations.

The defendants assert that the building is zoned "commercial" and that a clinic can be located only in a "heavy industrial district" zone. A county corporation counsel opinion, drafted on October 21, 1977, and sent to the plaintiff's lessor, is offered in support of the defendants' position. The defendants also assert that the building lacks certain plumbing equipment required by state law. However, the affidavits establish that the failure to have such equipment is due to the town's refusal to execute the required documents for state approval. Based on the chronology of events set forth in the parties' affidavits, I believe that the plaintiff is reasonably likely to be able to show that both of these alleged deficiencies are actually disguised attempts improperly to regulate or proscribe abortion procedures. *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861, 868 (8th Cir. 1977).

The final requirement for the granting of a preliminary injunction is that the public interest will not be disserved. The public's interest lies in the enforcement of that which is mandated by the Constitution. In this instance, the Constitution mandates that regulation not be imposed. Therefore, the plaintiff's motion for a preliminary injunction will be granted. Inasmuch as the plaintiff's challenge to chapter 22 relates only to first trimester abortions, the injunction will be so limited.

I am cognizant that section 37 of chapter 22 is a severability clause designed to save from court invalidation that which survives court scrutiny. However, the parties have not satisfactorily argued the merits of the individual provisions. I decline to perform this delicate surgery at this stage of the proceedings. Cf. *Planned Parenthood of Missouri v. Danforth*, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). Accordingly, the preliminary injunction will enjoin enforcement of the entire set of regulations.

Therefore, IT IS ORDERED that the plaintiff's motion for a preliminary injunction be and hereby is granted. It is ordered that the defendants be and hereby are preliminarily enjoined from enforcing chapter 22 of the ordinances of the Town of Grand Chute against the performance of first trimester abortions.